IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF MONTANA

BUTTE DIVISION

**FILED**

MAY 29 2013

Clerk, U.S. District Court
District Of Montana
Missoula

---

RUSTY JAMES ROGERS,

    Petitioner,

    vs.

MIKE FERRITER, Director,
Department of Corrections;
MARTIN L. FRINK, Warden,
Crossroads Correctional Center,

    Respondents.

Cause No. CV 12-13-BU-DLC-JCL

FINDINGS AND RECOMMENDATION
OF U.S. MAGISTRATE JUDGE

---

This case comes before the Court on an Answer and motion to dismiss filed by Respondent ("the State") on July 10, 2012. Petitioner Rusty Rogers seeks a writ of habeas corpus under 28 U.S.C. § 2254. He was convicted in Montana's Eighteenth Judicial District, Gallatin County, of two counts of sexual assault, violations of Mont. Code Ann. § 45-5-502, and sentenced to serve twenty years in prison, with ten years suspended. Judgment (doc. 1-4). He has been represented throughout this action by counsel Chad Wright.

The State moves to dismiss the habeas petition in its entirety as time-barred.

1

It asserts that some claims are procedurally barred as well. After prompting from the Court, Rogers responded on September 27, 2012. The State filed a Reply on October 11, 2012. The facts relevant to the motion to dismiss are not in dispute.

## I. Timeliness of the Federal Petition

The Anti-Terrorism and Effective Death Penalty Act of 1996 ("AEDPA") imposes a one-year limitations period on filing of state prisoners' petitions seeking relief under 28 U.S.C. § 2254. The date on which the limitations period commences is set by statute. 28 U.S.C. § 2244(d)(1); *Lee v. Lampert*, 653 F.3d 929, 933 (9th Cir. 2011) (en banc). Federal time is tolled while "a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending" in state court. 28 U.S.C. § 2244(d)(2). While equitable tolling may be available, *see Holland v. Florida*, __ U.S. __, 130 S. Ct. 2549, 2562 (2010), "a court must first determine whether a petition was untimely under the statute itself" before considering whether there is a need for equitable tolling, *Jorss v. Gomez*, 311 F.3d 1189, 1192 (9th Cir. 2003).

### A. Calculation of the Federal Limitations Period[1]

---

[1] The commencement date for the limitations period under § 2244(d)(1) is determined on a claim-by-claim basis, but tolling under § 2244(d)(2) applies when a state prisoner is challenging in state court a "pertinent *judgment or* claim." *Mardesich v. Cate*, 668 F.3d 1164, 1169-71 (9th Cir. 2012) (emphasis added) (following *Fielder v. Varner*, 379 F.3d 113 (3d Cir. 2004) (Alito, J.)); *see also id.* at 121-22 (distinguishing *Sweger v. Chesney*, 294 F.3d 506, 516-17 (3d Cir. 2002), on the grounds that *Fielder* concerned § 2244(d)(1) and *Sweger* concerned § 2244(d)(2)). Although

Rogers filed his federal petition on March 9, 2012. The parties agree that the limitations period began to run when Rogers' conviction became final. 28 U.S.C. § 2244(d)(1)(A). They agree that occurred on December 10, 2007. Day 1 of the federal limitations period was December 11, 2007. *See* State Br. (doc. 13) at 24; Rogers Br. (doc. 17) at 8. They also agree that federal time was tolled under § 2244(d)(2) from November 28, 2008, the day Rogers filed his petition for postconviction relief in the trial court, until May 17, 2011, when the Montana Supreme Court affirmed the trial court's denial of relief.

Rogers filed his state postconviction petition 354 days after his conviction became final. At that time, 12 days remained to file the federal petition. Consequently, absent other statutory tolling or equitable tolling, Rogers should have

---

Rogers' petition challenges only his conviction, not any aspect of his sentence, "[a] state court application need not contain the claims in the federal petition in order for that application to toll the statute of limitations." *Campbell v. Henry*, 614 F.3d 1056, 1062 (9th Cir. 2010) (reaffirming *Tillema v. Long*, 253 F.3d 494, 499-502 & nn.7-9 (9th Cir. 2001)). *Tillema* was abrogated on other grounds by *Pliler v. Ford*, 542 U.S. 225, 227 (2004). But it was favorably cited in *Kholi v. Wall*, 582 F.3d 147, 152 (1st Cir. 2009), the First Circuit's decision that was affirmed in *Wall v. Kholi*, discussed below. And other courts have reached the same decision as *Campbell* and *Tillema*. *See, e.g., Cowherd v. Million*, 380 F.3d 909, 910 (6th Cir. 2004) (en banc) (overruling prior circuit precedent holding otherwise); *Sweger*, 294 F.3d at 516-17; *Ford v. Moore*, 296 F.3d 1035, 1040 (11th Cir. 2002) (per curiam) (following *Tillema* and *Carter* and holding time tolled under § 2244(d)(2) for motion filed under Fla. R. Crim. P. 3.800); *Carter v. Litscher*, 275 F.3d 663, 665 (7th Cir. 2001) ("A state collateral proceeding based solely on state-law issues may avoid the need for federal relief, and a tolling rule permits prisoners to pursue such theories in state court without jeopardizing their ability to raise the federal constitutional issues later in federal court, if that proves to be necessary.") (citing *Duncan v. Walker*, 533 U.S. 167 (2001)). In short, the fact that a federal habeas petition does not challenge the sentence does not preclude tolling under § 2244(d)(2) while a petitioner pursues a state-law challenge to a sentence.

filed his federal petition within 12 days of the Montana Supreme Court's decision of his postconviction appeal, that is, on or before May 29, 2011. Because he filed on March 9, 2012, the State moves to dismiss the federal petition as untimely. But Rogers asserts bases for additional statutory tolling under § 2244(d)(2) and for equitable tolling of the federal limitations period.

## B. Statutory Tolling

Rogers asserts that his application for sentence review tolled time under 28 U.S.C. § 2244(d)(2). That section provides:

> The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

### 1. Does Sentence Review Toll Time Under 28 U.S.C. § 2244(d)(2)?

In *Weaver v. Attorney General*, No. CV 06-94-M (D. Mont. filed June 5, 2006), the court held that sentence review proceedings in Montana did not toll time under 28 U.S.C. § 2244(d)(2). The court reasoned that sentence review did not promote exhaustion of federal habeas claims because the Sentence Review Division does not consider legal arguments but only the adequacy and parity or disparity of the offender's sentence as compared to other sentences imposed for similar offenses.[2]

---

[2] On its own terms, *Weaver* would be difficult to apply in some situations. A federal court needs to know with some certainty what the sentence is before it can make a reliable determination

4

Findings and Recommendation (doc. 23) at 7-8, *Weaver*, No. CV 06-94-M (D. Mont. filed May 24, 2007). Subsequently, however, the United States Supreme Court decided that a motion seeking an entirely discretionary reduction of a previously imposed sentence tolls time under 28 U.S.C. § 2244(d)(2). *Wall v. Kholi*, __ U.S. __, 131 S. Ct. 1278, 1283-84 (2011).

*Kholi* characterized very broadly the nature of a proceeding that will give rise to statutory tolling under § 2244(d)(2): "'[C]ollateral review' of a judgment or claim means a judicial reexamination of a judgment or claim in a proceeding outside of the direct review process." *Kholi*, 131 S. Ct. at 1285. The Court contrasted a motion to

---

of some claims. *See Carey v. Saffold*, 536 U.S. 214, 220 (2002) (refuting State's interpretation of § 2244(d)(2) because it would "encourag[e] state prisoners to file federal habeas petitions *before* the State completes a full round of collateral review") (emphasis in original). For instance, a federal petitioner alleging that counsel was ineffective for failing to contest certain information raised at sentencing might be able to show prejudice while the sentence stands at 25 years, but not after the Sentence Review Division reduces the sentence to eight years; conversely, no postconviction claim might exist while the sentence stands at eight years, but a claim might accrue after the Sentence Review Division increases the sentence to 25 years. *See* Sentence Review Division Rules 15-18 (restricting review to information presented to trial court). Alternatively, a petitioner might have no reason to challenge a 15-year sentence imposed by a trial court on direct review, but might choose to assert an Eighth Amendment claim if the Sentence Review Division increases the sentence to 100 years. And a state prisoner who omits from his first federal petition a claim that has not yet been addressed in sentence review faces a substantial risk of losing any opportunity ever to raise that claim in federal court. *See Burton v. Stewart*, 549 U.S. 147, 154 (2007) (per curiam); 28 U.S.C. § 2244(b).

Moreover, a prisoner satisfied with a ruling by the Sentence Review Division might choose to forego the slim chance and potential risks of obtaining federal habeas relief. For example, a defendant who successfully challenges a guilty plea in a federal habeas proceeding may stand trial and then fairly receive a harsher sentence if additional information not available at the original sentencing comes to light. But "[i]f a defendant receives relief in state court, the need for federal habeas review may be narrowed or even obviated, and this furthers principles of comity, finality, and federalism." *Wall v. Kholi*, 131 S. Ct. 1278, 1288 (2011).

reduce sentence with requests for other types of relief, such as "a motion for post-conviction discovery or a motion for appointment of counsel, which generally are not direct requests for judicial review of a judgment and do not provide a state court with authority to order relief from a judgment." *Id.* at 1286 n.4.[3] The Court's opinion strongly suggests that *any* properly filed state proceeding in which one or more judges could order relief from the judgment will play a role, under one prong or another of § 2244(d), in calculation of the federal limitations period. As the Court said, "The first – and the critical – question is whether a Rhode Island Rule 35 sentence reduction proceeding is 'collateral.'" *Kholi*, 131 S. Ct. at 1286. The parties agreed it was, and so did the Court,[4] because the proceeding in question undertook "'a looking over or examination with a view to amendment or improvement'" of the criminal judgment. *Id.* at 1285 (quoting opinion below, 582 F.3d at 153).

The State seeks to distinguish *Kholi* to establish that sentence review has no

---

[3] *See also, e.g., Woodward v. Cline*, 693 F.3d 1289, 1293 (10th Cir. 2012) (motion for DNA testing "did not call for reexamination of the judgment" and so did not toll time under § 2244(d)(2)); *Collins v. Ercole*, 667 F.3d 247 (2d Cir. 2012) (holding that motion challenging manner in which two state sentences were executed did not "submit[ the] original court's work to examination for potential revision," *id.* at 251, and did not concern either "pertinent judgment" but "only a post-conviction administrative determination that the 2001 sentence ran consecutively," *id.* at 248).

[4] The Court noted "[w]e can imagine an argument" that a Rule 35 motion in Rhode Island "is in fact part of direct review under § 2244(d)(1) because . . . defendants in Rhode Island cannot raise any challenge to their sentences on direct appeal; instead, they must bring a Rule 35 motion." *Kholi*, 131 S. Ct. at 1286 n.3. One could imagine such an argument here as well. But, as explained in the next section, the Sentence Review Division does not review the sentence until after both direct and postconviction review. Thus, it seems clear the Division considers its review to be collateral.

6

implication at all for federal habeas proceedings in Montana. It claims that Montana's sentence review procedure is different from the motion at issue in *Kholi*, *see* R.I. Super. Ct. R. Crim. P. 35. A Rule 35 motion in Rhode Island serves as a substitute for appeal of the sentence on legal grounds and gives the sentencing court an opportunity to grant leniency, whereas sentence review does neither of those things. State Br. (doc. 13) at 14-17; *Kholi*, 131 S. Ct. at 1285-86 & n.3. But the Court did not hold the Rule 35 motion tolled time *because* it served as a substitute for appeal or *because* it offered leniency. The Court held the motion tolled simply because it was "collateral" to the criminal judgment in question and it "undoubtedly call[ed] for 'review' of the sentence." *Kholi*, 131 S. Ct. at 1286. This is a difficult verbal formulation for "sentence review" to overcome. Further, the Court specifically rejected Rhode Island's argument that tolling under § 2244(d)(2) is available only for proceedings that challenge the lawfulness of a prior judgment. *Id.* at 1287.

The State's second argument is that sentence review in Montana is like the Florida rule at issue in *Baker v. McNeil*, 439 Fed. Appx. 786 (11th Cir. 2011) (per curiam) (unpublished mem. disp.), *cert. denied*, __ U.S. __, 132 S. Ct. 1633 (2012). But, even assuming *Baker* is correct on its other points,[5] the Florida rule does not

---

[5] Subsequent decisions in the Eleventh Circuit appear to doubt it. *See, e.g.*, *Penney v. Secretary, Fla. Dep't of Corrections*, 707 F.3d 1239, 1241 (11th Cir. 2013); *Hutchinson v. Florida*, 677 F.3d 1097, 1098 (11th Cir. 2012) (noting that *Kholi* abrogated the circuit's prior precedent,

support the State's position here. As a "vital distinction between the rules at issue in *Kholi* and the ones in our case," the *Baker* court stated that a motion under Florida's Rule of Criminal Procedure 3.800(c) "clearly is only a request for leniency," 439 Fed. Appx. at 788, apparently meaning that there were no criteria to guide the judge's discretion. This might be a reasonable ground for distinguishing a motion in Florida under Rule 3.800(c) from a motion in Rhode Island under Rule 35, because *Kholi* stated that a judge deciding a Rule 35 motion under Rhode Island law was "guided by several factors," 131 S. Ct. at 1286-87.

But "for purposes of applying a federal statute that interacts with state procedural rules," a federal district court must "look to how a state procedure functions." *Carey v. Saffold*, 536 U.S. 214, 223 (2002). Sentence review in Montana is guided by several factors, and it certainly does not function as a request for

---

*Alexander v. Secretary, Fla. Dep't of Corrections*, 523 F.3d 1291, 1297-98 (11th Cir. 2008)). The *Baker* court reasoned that the Florida motion "is not a vehicle for raising legal error in the sentence," *Baker*, 439 Fed. Appx. at 788, a characteristic the *Kholi* Court held to be utterly without significance, *see* 131 S. Ct. at 1287; noted that Florida permits sentencing challenges in various other ways, *Baker*, 439 Fed. Appx. at 788, a factor that was not pivotal in *Kholi* as the motion there alleged no legal error but merely requested leniency; and thought it "pertinent" that only procedural issues could give rise to review by a higher court, yet without explaining why that fact was pertinent or made the Florida motion something other than a judicial reexamination of the sentence. Caution would be advisable at any rate. The *Kholi* Court granted *certiorari* to resolve a circuit split between, on one side, the First Circuit's decision below and the Tenth Circuit's decision in *Robinson v. Golder*, 443 F.3d 718, 720-21 (10th Cir. 2006) (per curiam), and, on the other side, *Hartmann v. Carroll*, 492 F.3d 478, 484 (3d Cir. 2007), *Walkowiak v. Haines*, 272 F.3d 234, 239 (4th Cir. 2001), and *Alexander*. The Supreme Court affirmed the First Circuit's decision in *Kholi*, 131 S. Ct. at 1283 n.2, but *Baker* turned back to *Alexander*, 439 Fed. Appx. at 787; *see also Alexander*, 523 F.3d at 1298-99 (following *Hartmann* and *Walkowiak*); *id.* at 1298 n.14 (noting but rejecting *Robinson*).

8

leniency:

> The primary objective of the Sentence Review Division is to provide for uniformity in sentencing when appropriate and to ensure that the interest of the public and the defendant are adequately addressed by the sentence. In reviewing the sentences, the Sentence Review Division shall consider the correctional policy of the State of Montana as set forth in Section 46-18-101 to protect society by preventing crime through punishment and rehabilitation of the convicted. The Sentence Review Division will hold an individual responsible and accountable for his/her actions and shall ensure that persons convicted of crime are dealt with in accordance with their individual characteristics, circumstances, needs and potentialities. The review shall be undertaken to assure that the sentence imposed is based on the following:
>
> A. The crime committed;
> B. The prospects of rehabilitation of the offenders;
> C. The circumstances under which the crime was committed;
> D. The criminal history of the offender.
>
> The Sentence Review Division shall further review the sentences, with a view to removing dangerous and habitual offenders from society and providing corrective treatment for such long terms as needed. In other cases, the Sentence Review Division shall consider whether the offender could have been dealt with adequately by probation, suspended sentence or fine where such disposition appears practicable and not detrimental to the needs of public safety and the welfare of the individual.

Sentence Review Division Rule 16.

Montana's "sentence review process is unique; it has aspects similar to sentencing before a district court and to an appeal." *State v. Triplett*, 195 P.3d 819, 824 ¶ 27 (Mont. 2008) (following *Ranta v. State*, 958 P.2d 670 (Mont. 1998)). On the "appeal" side, the Montana Supreme Court has said "the Sentence Review Division functions as an arm of this Court. Were the legislature to abolish the review

division, the function of reviewing sentences on equitable grounds would thus simply return to this Court." *Ranta*, 958 P.2d at 676 ¶ 27; *see also Jordan v. State*, 194 P.3d 657, 661 ¶ 18 (Mont. 2008) (describing a "review process" that is "bifurcated" between the Montana Supreme Court and the Sentence Review Division). The sentence imposed by the trial court is presumed correct, *id.* § 46-18-904(3); *Ranta v. State*, 958 P.2d 670, 676 ¶ 29 (Mont. 1998), and the Sentence Review Division considers whether the original sentence was "clearly inadequate or excessive." *Driver v. Sentence Review Div.*, 227 P.3d 1018, 1022 ¶ 21 (Mont. 2010); Sentence Review Division Rule 17. In addition, the Sentence Review Division "will not consider any matter or development subsequent to the imposition of the sentence in the District Court," Sentence Review Division Rule 18. In these respects, the Sentence Review Division functions like an appellate court.

But, on the "sentencing court" side, "the review division is empowered to *set* a sentence." *Ranta*, 958 P.2d at 676 ¶ 28 (emphasis added). That is a power the Montana Supreme Court does not possess. *Compare* Mont. Code Ann. § 46-20-703 *with id.* § -18-904(1). The Division is also empowered to "require the production of presentence reports and any other records, documents, or exhibits relevant to the review proceedings," another power the Montana Supreme Court does not possess, and unlike an appeal, the defendant has a right to appear in person, alongside counsel.

10

*Id.* § -18-904(2). To achieve its objectives as described in Rule 16, the Sentence Review Division may reduce the sentence, or leave it unchanged, or increase the sentence.[6] Mont. Code Ann. § 46-18-904(1)(a)(ii); *see, e.g., Jordan*, 194 P.3d at 659 ¶ 7 (sentence increased from 24 to 40 years, with further restriction on parole eligibility); *Ranta*, 958 P.2d at 672 ¶ 10 (sentence increased from two to ten years); *id.* at 674 ¶ 22 (noting that "in at least one case," a dissenting judge "wanted the review division to consider imposing the death penalty for the defendant."). It is not feasible that a state court performing this important function would be simply disregarded under § 2244(d)(2).

The power to set the sentence, whether by reducing it or increasing it, is central to the Sentence Review Division's function of facilitating uniformity in sentencing across State jurisdictions and ensuring that the sentence is adequate to punish the crime, deter and rehabilitate the offender, and protect the public. "[A] sentence imposed by the [Sentence Review] Division steps into the stead of the previous district court sentence and, in effect, becomes the 'original' sentence." *Triplett*, 195

---

[6] For this reason, the Montana Supreme Court held in *Ranta* that a sentence review applicant has a right to counsel. In *Ranta*, for instance, the applicant requested review of three district court sentences. Two of the sentences were affirmed, but one was increased from two years to ten years, consecutive to the other two. *Ranta*, 958 P.2d at 672 ¶ 10. The court did not pinpoint a sole source of the right to counsel in sentence review, but it did not believe it needed to do so. Regardless of whether the source was the Montana Constitution or the Sixth or Fourteenth Amendment, the court found it was clear that the right to counsel arose. *Id.* at 677 ¶ 32 (following *Consiglio v. Warden*, 220 A.2d 269 (Conn. 1966)).

11

P.3d at ¶ 30 (Mont. 2008).

The State finds significance in three additional facts about sentence review in Montana. First, sentence review is equitable rather than legal in nature; second, no appeal lies from a decision of the Sentence Review Division; and third, sentence review proceedings are informal and not constitutionally mandated. I do not see why these facts would mean sentence review has *no* significance in application of the federal limitations period. But, more importantly, these facts do not represent the whole truth under Montana law. First, while its primary focus is equitable, *State v. Herman*, 188 P.3d 978, 981 ¶¶ 11-12 & n.1 (Mont. 2008); *State v. Almanza*, 746 P.2d 1089, 1090-91 (Mont. 1987), the Sentence Review Division may take legal arguments into account, *Ranta*, 958 P.2d at 676-77 ¶ 30 (citing *State v. Hammer*, 251 Mont. 44 (S.R.D. 1991), and *State v. Gardipee*, 246 Mont. 36 (S.R.D. 1990)). To some extent, of course, it *must* do so. An illegal sentence is surely not fair, just, or similar to the sentences received by other, similarly situated offenders, and even courts of equity are obliged to conduct their own proceedings in such a way as to avoid making errors of law. "[D]iscretionary choices are not left to a court's inclination, but to its judgment; and its judgment is to be guided by sound legal principles." *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 416 (1975) (quoting *United States v. Burr*, 25 F. Cas. 30, 35 (C.C. Va. 1807) (No. 14,692d) (Marshall, C. J.)), *quoted in Kholi*, 131 S.

Ct. at 1288.

Second, whether an appeal lies is not decisive. No appeal lies from the Montana Supreme Court on a matter of state law, but that does not render direct review or postconviction proceedings null under § 2244(d)(2) where only state-law issues are raised. *Cf. Campbell*, 614 F.3d at 1062. No appeal lies at any stage of collateral proceedings in the State of California, yet California habeas proceedings give rise to statutory tolling under § 2244(d)(2). *Saffold*, 536 U.S. at 221-25.

Further, if a party believes the Sentence Review Division exceeded the bounds of the law or failed to follow fair procedures, the party may seek review of the Division's order – not by appeal, but by petition for extraordinary writ to the Montana Supreme Court. *Ranta*, 958 P.2d at 672 ¶ 12. The Montana Supreme Court's authority to review orders of the Division is the natural concomitant of the Montana Supreme Court's "supervisory authority to ensure that [the Sentence Review Division] complies with statutes and rules governing its operations as well as the Montana Constitution and the United States Constitution." *Id.* at 672 ¶ 12; Mont. Const. Art. 7, § 2(2), (3); Mont. R. App. P. 14(1)-(4) (formerly Mont. R. App. P. 17(a), *cited in Ranta*, 958 P.2d at 672 ¶ 12). The fact that the Sentence Review Division is the highest authority in the State of Montana when it comes to determining the appropriate sentence within statutory parameters does not mean

either that its orders can never be reviewed or, *a fortiori*, that its proceedings should play no role in the federal limitations period.

Finally, it is not relevant that sentence review is intended to be "as informal as possible to allow full expression by all parties and their attorneys," Sentence Review Division Rule 14, or that "[t]he Rules of Evidence will serve as a guide but are not binding," *id.* Sentencing in the trial court, too, is relatively informal, and the Rules of Evidence are not binding. *State v. Coluccio*, 214 P.3d 1282, 1289 ¶ 40 (Mont. 2009), *overruled on other grounds*, *State v. Kirn*, 274 P.3d 746, 747 ¶ 8 n.1 (Mont. 2012); *State v. Roedel*, 171 P.3d 694, 703 ¶ 65 (Mont. 2007). Informal judicial proceedings are no less judicial proceedings. And, while the State is correct that "there is no due process right to sentence review," State Br. (doc. 13) at 6; *State ex rel. Holt v. District Court*, 3 P.3d 608, 612 ¶ 12 (Mont. 2000), there is also no due process right to direct appeal, *Evitts v. Lucey*, 469 U.S. 387, 393 (1984). Yet § 2244(d)(1)(A) accommodates "direct review," including appeal, so there is no reason to believe the absence of a due process entitlement to sentence review precludes tolling under § 2244(d)(2).

Ultimately, the State's focus on various aspects of sentence review procedure attempts to introduce into *Kholi* distinctions that are not there. But the *Kholi* Court held that time was tolled because Kholi filed a timely and procedurally proper motion

14

asking a state judge to reconsider the state judgment. Likewise, sentence review in Montana "undoubtedly calls for 'review' of the sentence." *Kholi*, 131 S. Ct. at 1286. *Kholi* abrogates *Weaver*. Far from being "contrary to AEDPA's goal of furthering the principles of comity, finality, and federalism," State Br. (doc. 13) at 21 (internal brackets and quotation marks omitted), a federal court's accommodation of sentence review when applying § 2244(d) honors those values by ensuring that state prisoners need not file federal petitions before they have exhausted the State's available remedies authorizing state judges to reexamine state sentences. *See Saffold*, 536 U.S. at 220.

### 2. Is Rogers' Petition Timely?

Sentence review counts, but that does not necessarily mean Rogers' federal petition is timely. Section 2244(d)(2) authorizes tolling of the federal limitations period only while an application for collateral relief is both "properly filed" and "pending." Rogers argues that his sentence review application was properly filed and pending until sixty days after the conclusion of postconviction proceedings. To resolve the question, a closer look at the rules and procedures of the Sentence Review Division is required.

"Upon the imposition of the sentence,"[7] the clerk of each district court must notify both the defendant and defense counsel of "the right to make a request" for review of the sentence. Mont. Code Ann. § 46-18-903(1). A defendant "may[,] within 60 days from the date the sentence was imposed," apply for sentence review. *Id.* (Sixty days is also the period of time for filing a notice of appeal to the Montana Supreme Court. Mont. R. App. P. 4(5)(b)(i)). When an application is filed more than sixty days after sentencing,[8] the Sentence Review Division notifies the defendant that the application is untimely, requires him to give reasons why his application should be heard, and "may refuse to hear such application." Sentence Review Division 7 para. 1; *see also* Mont. Code Ann. § 46-18-903(3). But the Division "*will* hear late applications which have been caused by the taking of an appeal to the Montana Supreme Court." Sentence Review Division 7 para. 1 (emphasis added). The rules of the Division also provide:

> When there is a pending appeal or request for post-conviction relief, the application for Sentence Review *should not* be filed until such time as the petition for post-conviction relief or the appeal has been determined,

---

[7] Sentence review is not available if the sentence is less than one year in custody or if "a different sentence could not have been imposed." Mont. Code Ann. § 46-18-903(1).

[8] Similar to a notice of appeal, the application form consists simply of a statement of the date of sentencing and the sentence imposed and a request for review. The application also solicits a declaration as to whether the applicant will proceed with the same attorney appointed to represent him at sentencing, will waive his right to counsel, or will retain counsel. *See* Rogers Application (doc. 4-1) at 1.

at which time the defendant shall be given sixty (60) days in which to file for review of the sentence.

Sentence Review Division Rule 7 para. 2 (emphasis added).[9]

In sum, although the Sentence Review Division's Rules may advise waiting, the governing statute provides that a defendant *may* apply for sentence review within sixty days after sentencing. A defendant may also apply for sentence review after the Montana Supreme Court decides an appeal (whether on direct review, in postconviction, or both is not entirely clear), or within sixty days after a trial court's denial of a postconviction petition if there is no postconviction appeal.

Rogers timely received notice of his right to request review. The notice did not advise him of any time for filing and did not advise him that his application would be deferred until the conclusion of direct review and/or postconviction proceedings. *See* Rogers Application (doc. 11-11) at 1-2; *see also* Sentence Review Division Form No. 2. He filed his application on February 7, 2006, five days after his sentencing, stating

---

[9] It is not clear whether this second paragraph of Rule 7 refers exclusively to postconviction proceedings or also includes direct review. The phrase "[w]hen there is a pending appeal or request for post-conviction relief" may be read as "when there is a pending petition for postconviction relief or a pending appeal from a trial court's denial of postconviction relief"; or it may be read as "when there is a pending appeal on direct review or in postconviction proceedings, or when a petition for postconviction relief is pending in the trial court." The fact that the first paragraph refers to direct review may tend to support the former interpretation. But, at any rate, in Rogers' case, it is clear that the Sentence Review Division intended to defer its review until the conclusion of all other state remedies, including postconviction, even though no postconviction petition had been filed at the time the Division continued Rogers' hearing.

17

that he would either waive counsel or retain new counsel. Through counsel, he had also filed a notice of appeal the day before, on February 6, 2006. Notice of Appeal, *State v. Rogers*, No. DA 06-0131 (Mont. filed Feb. 6, 2006), *available at* http://supremecourtdocket.mt.gov (accessed May 10, 2013).

On January 2, 2008, following the Montana Supreme Court's disposition of the appeal on direct review, the Sentence Review Division notified Rogers that it would hear his application for sentence review on February 7, 2008. Notice of Hr'g (doc. 11-12) at 1. On January 18, 2008, the Division's judicial assistant, Shelly Hinson, wrote to Rogers to advise him that she had been informed he was "possibly in the process of filing a post conviction relief with the district court." Hinson advised Rogers that "all appeals must be completed prior to a sentence review hearing." She further advised:

> If you are in fact filing a post conviction relief, your application for sentence review will be held in abeyance pending the outcome of your post conviction and notification to the Sentence Review Division within sixty (60) days from the date in which your post conviction is decided.

> Please reply as soon as possible . . . as to whether you are proceeding with a post conviction or other type of an appeal. If you are, I will continue your hearing pending the outcome of your post conviction and will notify the prison that you will not need to be transported.

Letter to Rogers Jan. 18, 2008 (doc. 11-13), at 1.

Rogers responded:

18

> I am writing you back concerning case DC-05-035 so that I can inform you that at this time I have a new lawyer looking over my case so that he can file for the next level of the appeal process.
>
> I would ask that the sentence review process by pushed back as far as possible until all of my appeal options have been exhausted. I would like to make the sentence review my last option, not my first one like my lawyer tried to do. Given this I would ask that the Feb. 7 review be canceled, and no new date be assigned until the court hears from me.

Letter to Division Jan. 25, 2008 (doc. 11-14), at 1.

On January 29, 2008, Judge Irigoin of the Sentence Review Division issued an "Order to Continue Sentencing Hearing," vacating the February 7 hearing and stating that Rogers' application "will be held in abeyance pending notification to the Sentence Review Division within 60 days of the decision of the Defendant's final appeal." Order to Continue (doc. 11-15) at 1. And, on January 31, 2008, Hinson followed up with another letter to Rogers:

> [Y]our sentence review hearing scheduled for February 7 . . . [is] vacated and will be held in abeyance pending the outcome of the post conviction relief.
>
> You will need to notify the Sentence Review Division within sixty (60) days from the date in which your post conviction is decided if you are still interested in pursuing a review of your sentence with the Sentence Review Division. If you fail to notify this office within the time allowed, your file will not be reactivated.

Letter to Rogers Jan. 31, 2008 (doc. 11-16), at 1.

Rogers filed his postconviction petition on November 28, 2008. After the trial

court denied relief, he appealed to the Montana Supreme Court, and it affirmed the trial court on May 17, 2011. *Rogers v. State*, 253 P.3d 889, 897 ¶ 44 (Mont. 2011). Rogers did not contact the Sentence Review Division to request reactivation of his application for sentence review.

"[A]n application is 'properly filed' when its delivery and acceptance are in compliance with the applicable laws and rules governing filings." *Artuz v. Bennett*, 531 U.S. 4, 8 (2000). On February 7, 2006, five days after the imposition of his sentence, Rogers submitted to the clerk of the district court his completed form application for sentence review. The State asserts, without mentioning Mont. Code Ann. § 46-18-903(1), that "Montana's SRD *does not accept* any applications for sentence review until after all appeals and petitions for postconviction relief have been decided." State Br. at 23 (emphasis added). But the statute provides that Rogers must file the application with the clerk of the district court and may do so within 60 days after sentencing. The Sentence Review Division did not advise him that his application was untimely or premature but held it in abeyance. *See also* Sentence Review Division Rule 9 (requiring secretary to keep "minute book" of applications by date). The Sentence Review Division does not *hear* applications until the conclusion of other proceedings, but its setting of a hearing after direct review clearly shows that it had *accepted* Rogers' application. Rogers did what both the statute and

the Sentence Review Division's form notice said he could do, and he did it at a time when the statute said he could do it. His application was "properly filed" under Mont. Code Ann. § 46-18-903(1).

The State also asserts that Rogers' application was not "pending" after the Sentence Review Division ordered that it would be held in abeyance until Rogers completed the postconviction process. As the State points out, construing § 2244(d)(2) to allow tolling from February 7, 2006, when Rogers properly filed his application, to the time at which his opportunity to reactivate it expired on July 16, 2011, "would allow a state prisoner in Montana to toll the statute of limitations at will simply by filing an application for sentence review prior to appealing or seeking postconviction relief, and then never renewing the application after the other proceedings were determined." State Br. (doc. 13) at 23. This argument tacitly suggests that, if Rogers had renewed the application, the situation might be different, because the appearance that state procedures were being exploited to buy federal time would be dispelled. The more fundamental question, therefore, is whether time after January 2008 would be tolled for a prisoner who *did* timely "reactivate" his properly filed application, or, in other words, whether a subsequently-reactivated application would have been "pending" before the Sentence Review Division all the while.

Some language in the only Supreme Court case interpreting the word

21

"pending" in § 2244(d)(2) suggests that a reactivated application would indeed toll

time from its filing in February 2006 to its disposition, sometime after May 2011:

> The dictionary defines "pending" (when used as an adjective) as "in continuance" or "not yet decided." Webster's Third New International Dictionary 1669 (1993). It similarly defines the term (when used as a preposition) as "through the period of continuance . . . of," "until the . . . completion of." That definition, applied in the present context, means that an application is pending as long as the ordinary state collateral review process is "in continuance" – i.e., "until the completion of" that process. In other words, until the application has achieved final resolution through the State's post-conviction procedures, by definition it remains "pending."

*Saffold*, 536 U.S. at 219-20.

But *Saffold* and all the circuit court cases it cited in agreement,[10] *see id.* at 221,

were "interval-tolling" cases. That is, all of them considered whether time between

levels of a contiguous collateral review process in state court was tolled under §

2244(d)(2) or, on the contrary, whether the "gap time" counted against the

petitioner's federal limitations period. The State of California argued "for a 'uniform

national rule' to the effect that an application for state collateral review is not

'pending' in the state courts during the interval between a lower court's entry of

---

[10] *See Melancon v. Kaylo*, 259 F.3d 401, 406 (5th Cir. 2001); *Payton v. Brigano*, 256 F.3d 405, 408 (6th Cir. 2001); *Hizbullahankhamon v. Walker*, 255 F.3d 65, 72 (2d Cir. 2001) (Sotomayor, J.); *Nyland v. Moore*, 216 F.3d 1264, 1267 (11th Cir. 2000); *Swartz v. Meyers*, 204 F.3d 417, 421-22 (3d Cir. 2000); *Taylor v. Lee*, 186 F.3d 557, 560-61 (4th Cir. 1999); *Nino v. Galaza*, 183 F.3d 1003, 1005 (9th Cir. 1999); *Barnett v. Lemaster*, 167 F.3d 1321, 1323 (10th Cir. 1999).

judgment and the timely filing of a notice of appeal (or petition for review) in the next court." 536 U.S. at 219. Rejecting the proposed rule, the *Saffold* Court explained that the time for filing a notice or petition to activate the next stage of review is itself part of the State's established process for collateral review. *Id.* at 220 (citing, *inter alia, O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999)).[11] Under California's proposal, a petition filed in the trial court before expiration of the federal limitations period could become untimely while the time to appeal the trial court's denial of the petition was still open. That would, in turn, present the anomalous situation of simultaneously demanding that the state prisoner file his federal habeas petition to meet the time bar while also prohibiting him from filing because he had not exhausted his claims. *Id.*

In the interval situation, a state prisoner contemplating proceeding to the next level of state review is actively engaged in one ongoing state collateral review process. But a state prisoner who timely applies for sentence review is not actively engaged in sentence review when his application is held in abeyance to allow him to proceed instead with a separate process of state collateral review. A Montana prisoner who does not file for sentence review is not entitled to tolling under §

---

[11] In Montana's terms, *Saffold* dictates that time is tolled for the sixty-day period in which a petitioner could file a notice of appeal to the Montana Supreme Court from a trial court's denial of his postconviction petition, even if the petitioner chooses not to appeal.

23

2244(d)(2) from the date his conviction becomes final until he files a postconviction petition; nor is he entitled to tolling between postconviction proceedings and the filing of any state petition for writ of habeas corpus (even if a habeas petition is properly filed).[12]   State postconviction and state habeas are two separate collateral review processes.  Sentence review is another separate state collateral review process.

In terms of the *function* of Montana's collateral review opportunities, there is no difference between a prisoner who first pursues direct review, then litigates a postconviction petition, and only then applies for sentence review, on the one hand; and, on the other hand, a prisoner in Rogers' position, who timely applies for sentence review sixty days after sentencing but has his application held in abeyance while he pursues direct review and then postconviction relief.  Tolling the federal limitations period from the date of Rogers' application for sentence review to the date of the application's final closure would not serve any legitimate state interest, such as encouraging the good-faith use of state remedies.  Nor would it serve any legitimate interest of the state prisoner in not sacrificing federal time to the pursuit

_____

[12] Montana offers a few different forms of collateral relief. For prisoners convicted after July 1, 2003, a motion to withdraw a guilty plea must be filed within the same time one-year time frame as a postconviction petition. *See* Mont. Code Ann. § 46-16-105(2); 2003 Mont. Laws ch. 346 § 3. A state habeas petition may be filed at any time, but it may not be used to challenge the validity of a conviction or sentence. Mont. Code Ann. § 46-22-101. Thus, if the Montana Supreme Court holds that a petitioner attempted to use a state habeas petition to challenge a conviction or sentence, the petition was not "properly filed" and does not toll time under § 2244(d)(2).

24

of state remedies. Conversely, denying tolling while a sentence review application is held in abeyance does not pose any risk of requiring state prisoners to file federal petitions that are "in one sense unlawful (because the claims have not been exhausted) but in another sense required by law (because they would otherwise be barred by the 1-year statute of limitations)." *Saffold*, 536 U.S. at 220. Federal time will be tolled for active sentence review applications. Timely filing for state collateral review other than sentence review will continue to toll federal time in the same way it has for many years in this District. Montana prisoners will simply be required to timely pursue direct and collateral remedies, including, if they choose to apply, timely applications or reactivation of applications for sentence review.

Consequently, time should be tolled under § 2244(d)(2) while Rogers' application for sentence review was active, but not while it was inactive. The period of time from the conclusion of direct review to the time the Sentence Review Division ordered his properly filed application held in abeyance is tolled. Because the Sentence Review Division gave Rogers sixty days after the completion of his postconviction proceedings to reactivate his application, those sixty days are also tolled; under the terms of the Sentence Review Division's order, they were part of the State's established collateral review process. But the time between January 29, 2008, when the Sentence Review Division ordered Rogers' application held in abeyance,

and November 28, 2008, when Rogers filed his petition for postconviction relief, does not give rise to tolling under § 2244(d)(2). The sentence review application, though properly filed in compliance with state law, was not "pending" during that time.

Were the rule otherwise, every Montana prisoner qualified for sentence review would be well-advised to apply for it within sixty days of sentencing, whether review was really desired or not. Doing so would, in effect, increase the federal limitations period to at least two years and two months: one year after the conclusion of direct review to prepare a state postconviction petition, sixty days thereafter to decide whether to go ahead with sentence review, and then one more year after that to prepare a federal petition – all under the time-shelter of a sentence review application filed sixty days after sentencing, and all without ever intending actually to face the judges of the Sentence Review Division.

The decision here will not trigger that outlandish result. The reasoning of the Court's decision in *Saffold* and its explanation of the interaction of the federal limitations period with state collateral review procedures demonstrate that "pending" means actively in progress. A federal court must respect what the Montana Legislature says and what the Sentence Review Division of the Montana Supreme Court says and does. Tolling in the manner described here respects the intent of AEDPA, state prisoners' right to the federal writ, and the integrity of the collateral

26

review procedures developed by the State of Montana, including sentence review.

Because Rogers properly filed his application for sentence review within sixty days after sentencing, § 2244(d)(2) provided for tolling beginning on the date his conviction became final, December 10, 2007, and continuing until January 29, 2008, when the Sentence Review Division ordered his application held in abeyance. On January 30, 2008, which was still Day 1 of the federal limitations period, federal time again began to run. Rogers filed his state postconviction petition on November 28, 2008, stopping the federal clock under § 2244(d)(2) on Day 303 of the federal limitations period. His postconviction appeal was concluded on May 17, 2011, but the Sentence Review Division's order gave him sixty days after that, or until Monday, July 18, 2011,[13] to reactivate his sentence review application. Because he did not do so, tolling ceased on July 18. The federal limitations period re-commenced on July 19, 2011, at Day 303. Rogers had 62 days to file his federal petition, that is, until September 17, 2011. He did not file until March 9, 2012. His petition was untimely under § 2244(d).

## C. Equitable Tolling

Equitable tolling "soften[s] the harsh impact of technical rules which might

---

[13] Sixty days from May 17 is July 16, but that was a Saturday. I assume the Sentence Review Division would have accepted reactivation on Monday, July 18, 2011, as timely.

otherwise prevent a good faith litigant from having a day in court." *Jones v. Blanas*, 393 F.3d 918, 928 (9th Cir. 2004). But "[e]quitable tolling is justified in few cases." *Spitsyn v. Moore*, 345 F.3d 796, 799 (9th Cir. 2003). "The threshold for obtaining equitable tolling is very high," *Townsend v. Knowles*, 562 F.3d 1200, 1205 (9th Cir. 2009), *abrogated on other grounds by Walker v. Martin*, __ U.S. __, 131 S. Ct. 1120, 1124-25 (2011), "lest the exceptions swallow the rule," *Miranda v. Castro*, 292 F.3d 1063, 1066 (9th Cir. 2002); *Spitsyn*, 345 F.3d at 799. A petitioner is entitled to equitable tolling "only if he shows (1) that he has been pursuing his rights diligently, and (2) that some extraordinary circumstance stood in his way and prevented timely filing." *Holland*, 130 S. Ct. at 2562. The merits of a prisoner's claims for relief have no bearing on the equitable tolling inquiry.

Rogers asserted that he was entitled to equitable tolling for two reasons. First, he claimed that, in calculating his filing deadline, he reasonably relied on a decision issued by this Court in a different case. *See* Resp. to Order to Show Cause (doc. 4) at 4 (citing Findings and Recommendation (doc. 10), *Parrish v. Mahoney*, No. CV 11-54-M-DWM-JCL (D. Mont. May 16, 2011) ("the *Parrish* Order" or "the Order")). Second, he claimed that it would be unfair to hold him responsible for his attorney's untimely filing.

### 1. The *Parrish* Order

Reliance on binding precedent that is later overturned may constitute an extraordinary circumstance supporting equitable tolling when the overturning of that precedent is the key factor that renders a habeas petition untimely. *Harris v. Carter*, 515 F.3d 1051, 1055-56 (9th Cir. 2008). In *Harris*, the petitioner relied on *Dictado v. Ducharme*, 244 F.3d 724, 727-28 (9th Cir. 2001), before the rule announced in that case was abrogated by *Pace v. DiGuglielmo*, 544 U.S. 408, 417 (2005). As calculated under the *Dictado* rule, Harris's petition was filed nearly three months before the federal limitations period expired; but the petition suddenly became untimely by 15 months on the day the Supreme Court issued *Pace*.[14] Because Harris followed the law that was binding in the Ninth Circuit at a time when the Supreme Court had not decided the issue, his reliance on that law justified equitable tolling. *Harris*, 515 F.3d at 1057.

But such reliance can be reasonable only when the precedent is indeed controlling and when it concerns a point not previously decided otherwise by a higher court. It is not reasonable for a petitioner to assert a basis for equitable tolling

---

[14] In 2001, *Dictado* "h[e]ld that if a state's rule governing the timely commencement of state postconviction relief petitions contains exceptions that require a state court to examine the merits of a petition before it is dismissed, the petition, even if untimely, should be regarded as 'properly filed.'" *Dictado*, 244 F.3d at 727-28. In 2005, *Pace* "h[e]ld: When a postconviction petition is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)." *Pace*, 544 U.S. at 414 (quoting *Saffold*, 536 U.S. at 226). The Supreme Court's decision abrogated *Dictado* on precisely the point for which Harris relied on *Dictado*.

because he misconstrued precedent. *Chaffer v. Prosper*, 592 F.3d 1046, 1049 (9th Cir. 2010). *Parrish* did not announce a rule; it merely applied the law to the particular facts of Mr. Parrish's case. The analysis assumed Parrish's best-case scenario – i.e., that his direct appeal and postconviction proceedings overlapped to the extent that no time actually ran on the federal limitations period before the conclusion of postconviction proceedings: "*[A]t the latest*, [Parrish's] conviction was final *and* the federal limitations period began to run on December 6, 2006." *Parrish* Order at 2 (emphases added). Even under that scenario, Parrish did not file on time, so it did not matter when his conviction became final under § 2244(d)(1)(A) or when tolling for postconviction proceedings began under § 2244(d)(2).

28 U.S.C. § 2244(d) plainly describes two steps in application of the federal limitations period: first there is a commencement date under § 2244(d)(1), and then there is tolling under § 2244(d)(2). The question, therefore, is whether it was reasonable for Rogers to rely on one application of the law in *Parrish* instead of reading the controlling statute. It was not. "The language of § 2244(d) provides unambiguously that the one-year period within which a federal habeas petition must be filed commences on the 'conclusion of direct review.' This language does not contribute to a misunderstanding that would have the time commence on the 'conclusion of State post-conviction proceedings.'" *Harris v. Hutchinson*, 209 F.3d

325, 331 (4th Cir. 2000). Had counsel read § 2244(d), he could not have misread the *Parrish* Order. Counsel admits that he simply assumed the federal limitations period had something to do with "the final state ruling." Resp. to Order to Show Cause (doc. 4) at 3. But "the final state ruling" has no bearing on either the starting date of the federal limitations period under 28 U.S.C. § 2244(d)(1) or on tolling for state proceedings under § 2244(d)(2).[15] The *Parrish* Order does not refer to any "final state ruling" either. Rogers is not entitled to equitable tolling based on the *Parrish* Order. *Chaffer*, 592 F.3d at 1049.

## 2. Attorney Error

In response to the Order to Show Cause, Rogers alleged that "Mr. Rogers, himself, should not be punished for his attorney's reliance on the *Parrish* ruling." Resp. to Order to Show Cause at 4. He cited no authority.

"In virtually every case where the issue of equitable tolling comes up[,] one or more attorneys should have acted with more dispatch, but more than that is required." *Chavez v. Secretary, Fla. Dep't of Corrections*, 647 F.3d 1057, 1071 (11th Cir. 2011). "'[A] garden variety claim of excusable neglect,' such as a simple miscalculation that

---

[15] Parrish's case demonstrates why the "final state ruling" is irrelevant. After his postconviction appeal, Parrish filed in the trial court a motion to amend the judgment. When it was denied, he appealed to the Montana Supreme Court. *Parrish* Order at 2-3 (citing *State v. Parrish*, 239 P.3d 957, 958-59 ¶ 11 (Mont. 2010)). Which was the "final state ruling"?

leads a lawyer to miss a filing deadline, does not warrant equitable tolling." *Holland*,

130 S. Ct. at 2564 (quoting *Irwin v. Department of Veterans' Affairs*, 498 U.S. 89, 96

(1990)). Mistaken belief that the limitations period will be equitably tolled also does

not support equitable tolling, even if the mistake is reasonable and made in good

faith.[16] An attorney is an agent. As a result, a prisoner's untimely filing is not

excused if the delay was caused by "his or her counsel's 'own mistake.'" *Velasquez*

*v. Kirkland*, 639 F.3d 964, 969 (9th Cir. 2011) (quoting *Harris*, 515 F.3d at 1055).

Rogers does not allege professional misconduct on a scale comparable to that found

in *Holland* and in *Maples v. Thomas*, __ U.S. __, 132 S. Ct. 912, 923 (2012) (quoting

*Holland*, 130 S. Ct. at 2568 (Alito, J., concurring)).[17] So far as the sole fact alleged

here is concerned – counsel's reliance on the *Parrish* Order to tell him when to file

Rogers' federal petition – counsel's error is of the ordinary, "garden-variety" kind,

---

[16] *See, e.g.*, *Lawrence v. Florida*, 549 U.S. 327, 336-37 (2007) (holding, in a capital case, that an attorney's mistaken belief that limitations period was tolled was not an extraordinary circumstance); *Miranda*, 292 F.3d at 1067-68 (holding that mistaken statement of filing deadline by appointed appellate counsel was not an extraordinary circumstance); *Malcom v. Payne*, 281 F.3d 951, 963 (9th Cir. 2002) (no tolling where attorney believed pending clemency petition would toll federal limitations period); *Frye v. Hickman*, 273 F.3d 1144, 1146 (9th Cir. 2001) (holding that "miscalculation of the limitations period by Frye's counsel and his negligence in general do not constitute extraordinary circumstances").

[17] Although *Maples* concerns procedural default, not equitable tolling, the *Maples* Court expressly applied Justice Alito's reasoning about equitable tolling, in his *Holland* concurrence, to conclude that a lawyer who has abandoned a prisoner-client's case without giving notice to the client is no longer the client's agent, and the lawyer's acts and omissions may not be attributed to the client. *See Maples*, 132 S. Ct. at 923. Justice Alito's reasoning strongly reinforces Rogers' accountability for counsel's error here.

32

*Holland*, 130 S. Ct. at 2564. Consequently, "the principal bears the risk of negligent conduct on the part of his agent." *Coleman v. Thompson*, 501 U.S. 722, 750 (1991), *quoted in Maples*, 132 S. Ct. at 922.

### 3. Actual Innocence

Finally, Rogers has had two opportunities to assert actual innocence as grounds for equitable tolling. *Lee*, 653 F.3d at 934. He did not do so in his response to the Order to Show Cause, and he did not do so in response to the State's motion to dismiss.

### 4. Conclusion

Rogers is not entitled to equitable tolling of the federal limitations period.

## II. Procedural Default

In the event presiding Chief Judge Christensen disagrees with my time-bar analysis, I turn to address whether Rogers' claims are procedurally barred.

Rogers' petition alleges two claims for relief, with three factual predicates for the first and two factual predicates for the second. The State's brief refers to these claims as Claims 1 through 5. They are:

Claim 1.    Rogers' right to due process and right to present a defense were violated when the prosecutor denied defense requests to interview the alleged victims.

Claim 2.    Rogers' right to due process and right to present a defense

33

were violated when the prosecutor interfered with the testimony of one of the alleged victims on direct exam.

Claim 3.    Rogers' right to due process and right to present a defense were violated when the prosecutor elicited vouching testimony about the credibility of the alleged victims through lay witnesses' testimony, expert witness testimony and prosecutorial misconduct in closing arguments.

Claim 4.    Rogers' right to the effective assistance of counsel was violated when counsel failed to object to the interference with witness testimony or vouching for witness credibility;

Claim 5.    Rogers' right to the effective assistance of counsel was violated when trial counsel represented Rogers on appeal and foreclosed the ability to raise the vouching and prosecutorial misconduct issues.

*See* Pet. (doc. 1) at 17.

The State moves to dismiss Claims 1, 2, and 3, the prosecutorial misconduct claims, on grounds of procedural default. It does not challenge, and therefore has waived any challenge, to the procedural posture of Claims 4 and 5. *See* Answer (doc. 11) at 29-42.

### A. Claim 1

The State asserts that Claim 1 was not fairly presented to the Montana Supreme Court and so is procedurally defaulted. Rogers' brief on postconviction appeal stated that counsel "was denied access to the complaining witnesses." Appellant Br. (doc. 11-6) at 16. The brief further asserted that counsel's investigation was inadequate

because "[c]ounsel also needed to thoroughly interview E.H. and L.H.," and that counsel "tried to interview the girls before trial, but was not allowed access to the witnesses." *Id.* at 20.

But Rogers did not allege the *prosecutor* or the *trial court* denied him access to the victims. Thus, the "operative facts" that could have supported a claim of prosecutorial misconduct or violation of the right to present a defense were omitted; in addition, those legal theories were not asserted in connection with pretrial witness interviews.[18] Consequently, Claim 1 was not fairly presented to the Montana Supreme Court. *Davis v. Silva*, 511 F.3d 1005, 1009 (9th Cir. 2008).

No procedural avenue remains available in state court for Rogers to raise Claim 1 now. *See, e.g.*, Mont. Code Ann. § 46-21-105(1)(b). As state remedies have been exhausted, the claim is procedurally defaulted. *Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Coleman*, 501 U.S. at 735 n.1; *Smith v. Baldwin*, 510 F.3d 1127, 1137-39 (9th Cir. 2007) (en banc).

---

[18] In response to the State's motion to dismiss, Rogers explains that trial counsel's affidavit, presented by the State in response to Rogers' postconviction petition, said "When I discussed with the State the possibility of interviewing E.K. and L.W., the State stated that they would not be made available." Marshall Aff. (doc. 1-1) at 8 ¶ 47, *cited in* Rogers Br. (doc. 17) at 9-10. But a claim is not fairly presented to the state court if the court must look beyond the brief to assemble its elements. *Baldwin v. Reese*, 541 U.S. 27, 31-32 (2004). If the case were otherwise, the prospect of federal habeas proceedings would essentially compel state appellate courts to consider all federal claims on a *de novo* basis and to comb the record for supporting evidence. "[F]ederal habeas corpus law does not impose such a requirement." *Id.* at 31.

Rogers may excuse his procedural default, however, if he shows both cause and prejudice. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).[19] "Cause" means "some objective factor external to the defense" that prevented him from fairly presenting his claims in state court, such as lack of availability of the legal or factual basis for a claim, "some interference by officials," *Cook v. Schriro*, 538 F.3d 1000, 1027 (9th Cir. 2008) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)), or ineffective assistance of counsel, *Edwards v. Carpenter*, 529 U.S. 446, 451 (2000). If a proffered cause "is *itself* an independent constitutional claim" for habeas relief, it must also have been fairly presented in the state courts. *Id.* at 451-52. "Prejudice" means prejudice resulting from the constitutional violation he alleges. *Smith*, 510 F.3d at 1148 (quoting *Coleman*, 501 U.S. at 750).

Rogers attempts to show cause by asserting that his "claims of prosecutorial misconduct were foreclosed by [trial counsel's] conflict of interest," Rogers Br. (doc. 17) at 11, in acting as both trial counsel and appellate counsel. He presented a conflict-of-interest claim to the Montana Supreme Court on postconviction appeal, Appellant Br. (doc. 11-6) at 40-42; *Edwards v. Carpenter*, 529 U.S. 446, 453 (2000), and he asserted that counsel's dual role as both trial and appellate counsel prevented

---

[19] "Actual innocence" can excuse procedural default as well as a time bar, but, as set forth above, Part I.C(3), Rogers has not attempted to meet that very demanding standard.

her from asserting on direct appeal that she was ineffective in failing to object to the prosecutor's misconduct at trial. But Rogers' postconviction briefs did not include, within his list of unobjected-to acts of prosecutorial misconduct, any statement indicating that the prosecutor denied defense counsel access to the victims. Consequently, at no time and in no way was the Montana Supreme Court alerted that Rogers believed his federal constitutional rights were violated by the prosecutor's denying him access to the victims and by trial counsel's failure to object to the prosecutor's action. *See Edwards*, 529 U.S. at 453.

Because Claim 1 is procedurally defaulted, and because Rogers has not excused the default, Claim 1 should be dismissed with prejudice.

### B. Claims 2 and 3

As to Claims 2 and 3, the State relies on the Montana Supreme Court's imposition of a procedural bar. Claims 2 and 3 assert that the prosecutor committed misconduct by interfering with the testimony of one of the alleged victims on direct examination, by eliciting from lay and expert witnesses testimony vouching for the victims' credibility, and by vouching for the victim's credibility herself in closing arguments. The Montana Supreme Court held these claims could have been raised on direct appeal and so could not be raised in postconviction proceedings, pursuant to Mont. Code Ann. § 46-21-105(2). *Rogers v. State*, 253 P.3d 889, 897 ¶¶ 42-43

(Mont. 2011); *see also Valerio v. Crawford*, 306 F.3d 742, 773 (9th Cir. 2002) (en banc).

Although the Montana Supreme Court addressed the merits of portions of Claims 2 and 3, it is nonetheless clear that Rogers' claims of prosecutorial misconduct were also barred on state grounds. *Coleman*, 501 U.S. at 735; *Harris v. Reed*, 489 U.S. 255, 261-62 (1989); *Poland v. Stewart*, 169 F.3d 573, 578 n.8 (9th Cir. 1999); *Carriger v. Lewis*, 971 F.2d 329, 333 (9th Cir. 1992) (en banc). The Court has no reason to think Mont. Code Ann. § 46-21-105(2) is anything other than an adequate and independent state ground for the Montana Supreme Court's refusal to address Claims 2 and 3. Therefore, Claims 2 and 3 are procedurally defaulted and, like Claim 1, they may not be heard in federal court unless Rogers can excuse his default.

Unlike Claim 1, however, the State does not assert that Claims 2 and 3 were not fairly presented in state court. *See* Answer (doc. 11) at 27-29, 41-42. For that reason, Rogers' attempt to demonstrate cause and prejudice to excuse the state's procedural bar takes on a different character. In broad outline, the situation with respect to Claims 2 and 3 stands as follows. In postconviction proceedings, Rogers alleged prosecutorial misconduct. The Montana Supreme Court declined to consider the issue because it should have been raised on direct review. But Rogers also asserted

that trial counsel was ineffective because she failed to object to prosecutorial misconduct at trial and, on direct appeal, suffered from a conflict of interest, which gave her a perverse incentive to withhold a claim that her own failure to object at trial was constitutionally ineffective, even though making that claim had the potential to open the prosecutor's alleged misconduct to the Montana Supreme Court's review.

The Montana Supreme Court rejected Rogers' conflict-of-interest claim on the merits. But the question at hand is whether Claims 2 and 3, which allege prosecutorial misconduct, can be addressed on their merits in federal court despite imposition of an adequate and independent state procedural bar under Mont. Code Ann. § 46-21-105(2). Assuming, solely for the sake of argument, that Rogers' counsel was not functioning as the Sixth Amendment requires at trial because she failed to object, and also was not functioning as the Fourteenth Amendment requires on direct review because she did not raise her own ineffectiveness, then Rogers did not, in fact, have a fair opportunity to vindicate his claim of prosecutorial misconduct in *state* court. Counsel's performance serves as cause to excuse Rogers' procedural default of his claim of prosecutorial misconduct.

This is how the cause and prejudice test, as envisioned by *Coleman* and refined by *Edwards*, is designed to function. Where its requirements are met, it revives potentially meritorious claims of federal constitutional error, despite default in state

court, if the default was itself the product of federal constitutional error, provided the state court had the opportunity to address *both* claims of constitutional error. Because Rogers fairly presented to the Montana Supreme Court his claims of ineffective assistance of counsel and counsel's conflict of interest, as well as his claims of prosecutorial misconduct as set forth in Claims 2 and 3, he succeeds in showing cause under *Edwards*.

To reliably assess prejudice, a close consideration of the evidence presented at trial would be required. Rogers might not prevail on the merits. But, for purposes of deciding the motion to dismiss, Claims 2 and 3 make enough of a showing of prejudice to warrant denial of the motion as to those claims. Rogers has excused his failure to comply with Mont. Code Ann. § 46-21-105(2). Claims 2 and 3 are not barred. The motion to dismiss should be denied as to them.

## III. Certificate of Appealability

"The district court must issue or deny a certificate of appealability when it enters a final order adverse to the applicant." Rule 11(a), Rules Governing § 2254 Proceedings. A COA should issue as to those claims on which the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). The standard is satisfied if "jurists of reason could disagree with the district court's resolution of [the] constitutional claims" or "conclude the issues

40

presented are adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 327 (2003) (citing *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)). Where a claim is dismissed on procedural grounds, the court must also decide whether "jurists of reason would find it debatable whether the district court was correct in its procedural ruling." *Lambright v. Stewart*, 220 F.3d 1022, 1026 (9th Cir. 2000) (quoting *Slack*, 529 U.S. 473, 484 (2000)).

Each of Rogers' claims meets the low threshold for obtaining a COA. There is no room for doubt, however, as to the procedural ruling that Claim 1 is procedurally defaulted without excuse. That issue should not be certified. Whether and when sentence review proceedings in Montana toll the limitations period under § 2244(d)(2), however, is an issue on which reasonable jurists could disagree, although the Court believes the analysis here to be correct. That issue should be certified.

Based on the foregoing, the Court enters the following:

## RECOMMENDATION

1. The Petition (doc. 1) should be DISMISSED WITH PREJUDICE as time-barred and Claim 1 should also be DISMISSED WITH PREJUDICE as procedurally barred.

41

2. The Clerk of Court should be directed to enter by separate document a judgment in favor of Respondents and against Petitioner.

3. A certificate of appealability should be DENIED as to procedural default of Claim 1 and GRANTED on the issue of whether and when sentence review proceedings in Montana toll the federal limitations period under 28 U.S.C. § 2244(d)(2).

4. Pursuant to 28 U.S.C. § 636(b)(1) and D. Mont. L.R. 72.3, the parties may serve and file written objections to this Findings and Recommendation within fourteen (14) days of the date entered as indicated on the Notice of Electronic Filing.

DATED this _29th_ day of May, 2013.

Jeremiah C. Lynch
United States Magistrate Judge